IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS AUGUSTYN,

            Plaintiff,            Civil No. 04-6170-TC

    v.                                  O R D E R

DEE JONES,

            Defendant.

COFFIN, Magistrate Judge:

    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and alleges that his First and Fourteenth Amendment rights to freedom of speech, privacy[1] and due process have been violated.

    Presently before the court is defendant's motion (#13) for summary judgment.

---

[1] Plaintiff appears to have abandoned any right to privacy claim he initially asserted and <u>Fugate v. Phoenix Civil Service Board</u>, 791 F.2d 736 (9th Cir. 1986) suggests that there is no such claim in the circumstances of this action.

## Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 32. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586, 106 S.Ct. 1348, 1355 (1986); <u>Taylor v. List</u>, 880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. <u>Hector v. Wiens</u>, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Valadingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. <u>Sankovich v. Insurance Co. of North America</u>, 638 F.2d 136, 140 (9th Cir. 1981).

## Background

Plaintiff was an employee of the Oregon Department of Transportation (ODOT). ODOT held a three day seminar at the Red Lion Hotel in Salem. On the evening after the first day of the conference, plaintiff met with other employees of ODOT in the hotel's bar. While there, they started to tell jokes. Plaintiff proceeded to tell one of his own. He asked the assembled group, "how does a one-armed man count his change?" He then proceeded to stand up, shove his hand down his pants, stick his finger through his fly, and, pretending his finger was a penis, made counting motions with that finger and his other hand. Plaintiff admits that from where he was standing, others

3 - ORDER

in the bar would probably have been able to view his actions.

Defendant Jones is the only defendant in this action. Jones is a right of way manager for ODOT and one of plaintiff's supervisors. She called plaintiff into her office to discuss the joke incident. Another supervisor, Richard Dunlop, was also present. Plaintiff contends that defendant Jones, based on a citizen complaint, incorrectly accused plaintiff of exposing himself. Plaintiff admitted at the meeting that he had told the joke. A month later, after considering the matter, defendant Jones handed plaintiff a memo entitled "Clarification of Expectations."[2] The memo reiterated and set forth portions of ODOT's ethics policy and harassment policy. The memo also stated:

> As you and I discussed on May 30, 2002, when you are at work or in a capacity associated with your employment, the behavior you engage in reflects on and affects others' perceptions of your employer (and coworkers). Your employer's reputation and interests may be negatively affected by your behavior when observers perceive your behavior negatively or are offended by your actions and associate your behavior with ODOT.
>
> I expect you - when you are at work or whenever your behavior will be associated with ODOT - to conduct yourself in a professional, appropriate manner that is consistent with the guidelines set forth in the policies cited above. Refraining from offensive behavior and/or off-color

---

[2]The memo was apparently copied to human resources and plaintiff's supervisor.

> jokes -among other things - is included in my expectations of you.
>
> Tom, I value you as an employee and appreciate the contributions you make to our department. I have confidence in your ability to meet the expectations set forth above and am available to support you in doing so.

Exh. E attached to Affidavit (#26).

Plaintiff contends that

> [a]s a result of the memorandum, [he] was forced to stop speaking the way he would normally speak both at work and on his own time for fear of being reprimanded or terminated.... The incident hung over [him] like a cloud and he could tell that Jones, Dunlop and other coworkers looked at him differently because of the incident .... [He] retired because he could no longer stand the intolerable working conditions that had resulted from this incident. He would not have retired if he had not been accused of exposing himself and there had been a thorough investigation which resulted in his name being cleared of the false accusations.

P.p. 6-7 of Plaintiff's Memo (#28) (factual citations omitted).

The retirement occurred one year after the incident.[3]

### Discussion

First Amendment Claim

Plaintiff's First Amendment claim arising from his joke telling fails. As stated in Roe v. City of San Diego, 125 S. Ct. 521 (2005):

---

[3] Although immaterial to my findings today, defendant emphasizes this one year lapse and argues that the retirement was entirely voluntary and based more on legislative changes to the PERS retirement system than anything else.

5 - ORDER

> To reconcile the employee's right to engage in speech and the government employer's right to protect its legitimate interest in performing its mission, the <u>Pickering</u> Court adopted a balancing test. It requires a court evaluating restraints on a public employee's speech to balance the interests of the employee, as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees. ....
> <u>Pickering</u> did not hold that any and all statements by a public employee are entitled to balancing. To require <u>Pickering</u> balancing in every case where speech by a public employee were at issue, no matter the content of the speech, could compromise the proper functioning of government offices. This concern prompted the Court in <u>Connick</u> to explain a threshold inquiry (implicit in <u>Pickering</u> itself) that in order to merit <u>Pickering</u> balancing, a public employee's speech must touch on a matter of 'public concern.'

125 S.Ct. at 524-525 (citations, quotations and brackets omitted).

The content, form and context of plaintiff's joke telling clearly indicate that the matter is not one of public concern and, as such, it is not entitled to the <u>Pickering</u> balancing test. And, although a public employee's speech does not necessarily have to be on a matter of public concern to be protectable, the circumstances of this case set forth above indicate that plaintiff's First Amendment rights were not violated. "When employee expression cannot fairly be considered as relating to any matter of political, social, or other

concern to the community, government officials should enjoy wide latitude in managing their offices without instrusive oversight by the judiciary in the name of the First Amendment." Connick v. Myers, 461 U.S. 138, 146 (1983). Moreover,

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual of circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Id.

Even assuming, as many cases do arguendo, that plaintiff's speech was on a matter of public concern and that Pickering balancing applies, defendant can justify the action she took in response to plaintiff's speech. Defendant could reasonably believe that the speech would potentially interfere with or disrupt ODOT's activities. See Waters v. Churchill, 511 U.S. 661, 673 (1994)(giving "substantial weight to government employers' reasonable predictions of disruption"). It could lead to the dismissal of an experienced employee, it could affect harmony among coworkers and, as discussed in more detail subsequently, it could affect ODOT's finances if ODOT were sued for harassment. It could also affect public perception and support of ODOT. Such outweighs

7 - ORDER

plaintiff's interest in speaking on this subject which does not even touch on matters of public concern.[4]

Plaintiff makes much of the fact that his speech did not take place at work. However, defendant employers have prevailed in many First Amendment cases where speech was outside the workplace. See, e.g., Roe, supra, Melzer v. Board of Education of the City School District of the city of New York, 336 F.3d 185 (2d Cir. 2003); Pappas v. Giuliana, 290 F.3d 143 (2d Cir. 2002). Moreover, the speech was not a matter of public concern, and while the speech did not take place at work, it did take place in a hotel bar that could possibly be associated with ODOT by virtue of ODOT holding a three day seminar there for its employees and it did take place in the presence of other coworkers who were present as a result of the work seminar.

Plaintiff also contends that the Clarification of Expectations memo is an unlawful prior restraint on speech. However, the memo is not an unlawful prior restraint for many reasons. See Jarmon v. City of Norhtlake, 950 F. Supp. 1375, 1379 (N.D. Ill. 1997). Among them is the fact that hundreds, if not thousands, of hostile work environment sexual harassment cases indicate that employers (including public employers) are not only permitted to prevent verbal and physical acts of

---

[4]Similarly, plaintiff's claim fails under United States v. Treasury Employees, 115 S. Ct. 1003 (1995) and its progeny. Unlike those cases, defendant here can show that the speech impacted the mission and purpose of the employer.

harassment in their workplace, but are required them to do so under Title VII. Defendant was basically emphasizing and reminding plaintiff to conduct himself in an appropriate manner consistent with the public employer's existing ethics and sexual harassment policies.[5] Such is not an unlawful restraint on speech.

Due Process Claim

Plaintiff argues, without legal support, that his substantive "and/or" procedural due process rights were violated. Such claim fails.

As to substantive due process, plaintiff has failed to identify conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998). Also see generally p.p. 14-15 of Reply (#31).

The procedural due process claim also fails for several reasons. Plaintiff, by his own admission, never appealed the Clarification of Expectations memo. Plaintiff has no colorable objection to the validity of the State's procedures and no due process violation. Daniel v. Williams, 474 U.S. 327, 339-40 (1986). Also see generally p.p. 15-16 of Reply (#31).

---

[5]Such policies refer to the public and outside observers, state that actions taken off the job while utilizing ODOT resources which create the impression that an employee is acting as an ODOT employee require the employee to conduct himself as if he were on duty, and state that sexual talk such as jokes can be defined as sexual harassment. Plaintiff has not challenged the constitutionality of such policies in this action.

Qualified Immunity

Defendant is simply not liable in this action. Even assuming, arguendo, that defendant's conduct violated a constitutional right, defendant would be entitled to qualified immunity. The parameters of an employer's ability to handle an employee's on and off duty speech that could be related back to the employer is not very clear. See, e.g., Pappas, supra ; Jarmon , supra. Under the law, a reasonable official could have believed that the conduct taken in this action was lawful and did not violate plaintiff's rights. As such, defendant is entitled to qualified immunity. Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir. 1993); Saucier v. Katz, 533 U.S. 194 (2001). Also see generally p.p. 11-13 of Reply (#31).

## Conclusion

Defendant's motion (#13) for summary judgment is allowed and this action is dismissed.

DATED this 27th day of April, 2005.

_____
THOMAS M. COFFIN
United States Magistrate Judge